**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -**

**DOLORES DE LA CRUZ and ROSEMARY**
**VEGA on behalf of themselves and all others**
**similarly situated,**

                                   **Plaintiffs,**

         **v.**                                    **03-CV-1133**

**GILL CORN FARMS, INC. and JOHN H.**
**GILL,**

                                   **Defendants.**

**- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -**

**THOMAS J. McAVOY**
**Senior United States District Judge**

                       <u>**DECISION and ORDER**</u>

**I.       INTRODUCTION**

         Plaintiffs commenced the instant action alleging violations of the Fair Labor

Standards Act ("FLSA"), 29 U.S.C. § 207, the Migrant and Seasonal Agricultural Workers

Protection Act ("AWPA"), 29 U.S.C. § 1801, et seq., New York Labor Law § 681 (overtime),

and New York Real Property Law § 235-b (warranty of habitability), arising out of their work

for Defendant Gill Corn Farms, Inc. ("Gill").  Currently before the Court is Defendants' motion

for summary judgment pursuant to FED. R. CIV. P. 56.

**II.      FACTS**

         Defendant John H. Gill is president of Gill Corn Farms, Inc. ("Gill Farms").  John Gill

and his brother, David Gill, are owners of Gill Farm Land, LLC.  Gill Farm Land owns 1000

acres of farm land.  Gill Farm Land also owns the buildings on the land, including labor

camps, barns, and offices.  Gill Farms rents the land and buildings from Gill Farm Land.  Gill Farm owns the crop it produces, either owns or leases the equipment it uses to produce crops, and owns the packing line and refrigeration equipment.  John Gill also is sole owner and president of Gill Farm Sales, LLP, a vegetable brokerage business that employs two salesmen.  Gill Farm Sales does not handle the sales of crops produced by Gill Farms.[1]

Gill Farms farms 1500 acres of land.  One thousand of these acres are rented from Gill Farms Land.  The remaining land is rented from other persons.  With one exception to be discussed, Gill Farms planted, cultivated, irrigated, sprayed, harvested, packed, and sold the corn it grew.

In 1996, Gill Farms entered into an oral agreement with Henry Paul of Pauls Farm to rent approximately 290 acres of land.  Gill Farms owned the crop on this land.  No employees of Pauls Farm were involved in farming this land.

John Gill also entered into an agreement with Pauls Farm to lease an additional approximately 50 acres of land.  Under this separate agreement, Gill Farms was required to provide work for Michael Paul, Henry Paul's son, and a long-time Pauls Farm employee, Charlie Baldwin, when they were not busy at Pauls Farm.[2]  Under this agreement, Pauls Farm did not contribute to or pay any of the costs of production (other than, perhaps, providing some services by Baldwin).  Gill Farms provided the seed, specified how the seed was to be planted, prepared the land for planting, applied fertilizer and pesticides, and

---

[1] The two employees who sell for Gill Farm Sales also sell for Gill Farm.  However, for sales on behalf of Gill Farm, the employees are paid through Gill Farm and not Gill Farm Sales.

[2] There is testimony in the record to the effect that this deal was made because Henry Paul was starting to downsize and slow down his farming and wished to ensure continued employment for his son and Baldwin.

irrigated, harvested, packed and sold the corn.  Charlie Baldwin, of Pauls Farm, actually planted the seed.  No other persons affiliated with Pauls Farm were involved in producing or harvesting this land.  The corn grown on this land was taken to Gill Farms for packing in the packing shed.  Pauls Farm received payment based on the price received for corn each year after the cost of production was deducted.  If a balance remained after the deductions, Gill Farms received $.50 a box and the remaining balance was paid to Pauls Farm.

Gill Farms operates a packing shed from mid-July through the end of September.  Often, seasonal workers, including the Plaintiffs herein, performed various functions in the packing shed.  According to Defendants, Gill Farms is not paid by any farmers to pack another farm's product and that the only corn that comes to the packing shed is corn that Gill Farms picks and dumps into its wagons.  Plaintiffs, on the other hand, contend that they witnessed corn that was hand cut (and, therefore, belonging to Paul Farms because Gill Farms used mechanized harvesters) being brought to the Gill Farm packing shed by Pauls Farm employees to be packed.  Any such practice was expressly denied by John Gill and Michael Paul.

Gill Farms recruited many of its workers through Johnny Martinez, a licensed farm labor contractor.  Martinez would travel to Florida and explain the job opportunities at Gill Farms.  Some workers would sign up to work at Gill Farms through Martinez.  Other workers learned of job opportunities at Gill Farms through word of mouth and were hired directly by Gill Farms in New York.

Gill Farms's agricultural workers were provided with housing.  The housing consisted of seven buildings containing over seventy rooms.  Gill Farms received housing permits from the New York State Department of Health each year.  The housing also was

inspected periodically.  From time to time, as explained in more detail *infra,* the inspections revealed certain violations.

## III.      STANDARD OF REVIEW

It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c).  An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).  With this standard in mind, the Court will address Defendants' motion.

IV.      DISCUSSION

a.      **Fair Labor Standards Act**

Plaintiffs allege that Defendants failed to pay overtime wages for hours worked in excess of forty per week in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*  The primary dispute is whether the work performed by Plaintiff fell within an exception to the FLSA.

Generally speaking, the FLSA requires employers to pay its employees at rates not less than one and one-half times the regular rate for work in excess of forty hours per week. See 29 U.S.C. § 207(a)(1).  The FLSA contains an exemption for "any employees employed in agriculture."  The term "agriculture" is defined as including:

> farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities . . . performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market.

29 U.S.C. § 203(f).  This statutory definition has been split into two definitions of agriculture: (1) primary agriculture; and (2) secondary agriculture.  Primary agriculture includes cultivation and tilling of soil, cultivation, and growing and harvesting.  29 C.F.R. § 780.105(b). Secondary agriculture includes "any practices, whether or not they are themselves farming practices, which are performed either by a farmer or on a farm as an incident to or in conjunction with 'such' farming operations."  29 C.F.R. § 780.105(c).

Distilled to its essence, the primary dispute between the parties on the FLSA claim is whether the work performed by Plaintiffs in the packing shed falls within the agricultural exemption to the FLSA.  It is Defendants' position that, because all corn packed in the

packing house constituted corn grown by Gill Farms, it is exempt secondary agricultural work.
Plaintiffs' contend that some of the corn packed in the packing house was actually owned by
Pauls Farm and, therefore, a portion of the work in the packing house (that performed for
Pauls Farm) was not "agriculture" (not secondary agriculture) and the exemption would not
apply to that non-agricultural work.

In the instant matter, Gill Farms unquestionably engaged in primary agricultural
activities by growing corn.  This status was not lost merely because Gill Farms did not own all
the land upon which it grew corn.  See 29 C.F.R. § 780.131 ("As a general rule, a farmer
performs his farming operations on land owned, leased or controlled be him and devoted to
his own use.").  The packing work similarly qualifies as agriculture work, albeit within the
definition of secondary agriculture.  See 29 C.F.R. § 780.151(b) (packing).  There can be
little dispute that packing corn is necessary to prepare it for market, delivery to storage, or
delivery to carriers.

We are, thus, left with the question of whether Gill Farms was packing corn for
Pauls Farm.  If so, Gill Farms would not have been engaged in secondary agriculture
because the packing work would not have been incidental to *its* farming activities, but that of
Pauls Farm.  See 29 C.F.R. § 780.140 ("Ordinarily, a practice performed by a farmer in
connection with farming operations conducted on land which he owns or leases will be
considered as performed in connection with the farming operations of such farmer in the
absence of facts indicating that the farming operations are actually those of someone else.
Conversely, a contrary conclusion will ordinarily be justified if such farmer is not the owner or
a bona fide lessee of such land during the period when the farming operations take place.").
Plaintiffs contend that Defendants were not engaged in secondary agriculture because: (1) a

"farmer" does not own the packing shed; (2) the packing shed is not used by a farmer or located on a farm; (3) the produce processed in the packing shed is produced on different non-adjoining parcels of land not owned by Defendants; and (4) the corn produced on the 50 acres of land owned by the Pauls is not produced or owned by Defendants.  The Court will address these claims *seriatim*.

1.      **Whether the Packing Shed is Owned or Used by a Farmer and Located on a Farm**

Plaintiff contend that the packing shed is not owned by a farmer because: (i) it is owned by Gill Farm Land, rather than Gill Farms; (ii) John Gill is not a farmer because he is the president of a complex multimillion dollar corporation structure that includes real estate and brokerage companies; and (iii) the packing shed is located on rental property owned by a real estate company and the property also includes offices and housing, thereby supporting the conclusion that the packing shed is not located on a farm.

Plaintiffs argue that the packing shed is actually owned by Gill Farm Land and that Gill Farm Land is not a "farmer", but a real estate company.  This argument is rejected because the undisputed evidence in the record is that Gill Farm rents the land *and buildings (which includes the packing shed)* from Gill Farm Land for its farming operations.[3]  It is irrelevant that the actual title holder is not a farmer, provided that the operations therein are being performed by a farmer.  In any event, the undisputed evidence is that Gill Farm Land and Gill Farms are integrated into the over-all agricultural enterprise.  See Ares v. Manual Diaz Farms, Inc., 318 F.3d 1054, 1057-58 (11th Cir. 2003); Wirtz v. Jackson & Perkins Co.,

---

[3] Although Plaintiff contests whether Gill Farms pays fair market value to Gill Farm Land, John Gill testified at deposition that the rent is based on an average of rents paid to other landlords.  Plaintiff offers no evidence from which it can reasonably be concluded that Gill Farms does not pay fair market value.

312 F.2d 48 (2d Cir. 1962); <u>Dofflemyer v. NLRB</u>, 206 F.2d 813 (9th Cir. 1953).  The only reasonable conclusion is that the packing shed is both located on a farm and being used by a farmer.  <u>Id</u>.

　　　　With respect to the argument that John Gill or Gill Farms is not a "farmer," it is irrelevant whether John Gill personally might engage in activities other than farming.  29 C.F.R. 780.130 ("it is immaterial . . . whether farming is his sole occupation.").  "The term 'farmer' . . . is not confined to individual persons.  Thus an association, a partnership, or a corporation which engages in actual farming operations may be a 'farmer'."  29 C.F.R. § 780.130.  The undisputed evidence before the Court is that Gill Farms is a farming operation that grows and sells vegetables.  In most instances, Gill Farms provided all of the work and effort required in planting, harvesting, packing and selling its produce.  With respect to the 50 acres owned by Paul Farm, Gill Farms did everything except plant the seed.  It, thus, is clear that Gill Farms is a "farmer."  Even if Gill Farms is a subsidiary of some other corporation (of which there is no evidence), it does not take away from the fact that Gill Farms, the entity for whom Plaintiffs worked, is a "farmer."  <u>See</u> <u>Wirtz v. Jackson & Perkins Co.</u>, 312 F.2d 48 (2d Cir. 1962); <u>Ares</u>, 318 F.3d 1054.

　　　　Moreover, there is no evidence in the record from which it reasonably may be inferred that Mike Justice and Tim Richards, who worked both for Gill Farms and Gill Farm Sales, were paid by Gill Farms for selling the produce of other farmers.  Rather, the undisputed evidence is that when Justice and Richards sold Gill Farms produce, they were paid by Gill Farms, and when they sold produce from other farms, they were paid via other means.  Plaintiff has not offered any evidence tending to suggest that Gill Farms sold corn for any other farms.

### 2.      Corn Grown on Land Owned by Pauls Farm

Plaintiffs next contend that Gill Farms's packing house is processing produce owned by Pauls Farm and, therefore, is an independent packing activity outside the definition of secondary agriculture.  In support of their position, Plaintiffs argue that, with respect to the approximately 50 acre parcel of land, Pauls Farm contributes to the production of the farm (a Pauls Farm employee planted the seed using a planter owned by Pauls Farm and the corn is grown on Pauls Farm land), Pauls Farm bears the risk of loss, and the corn grown on Pauls Farm necessarily must be an independent activity because there must be "separate bookkeeping activities concerning cost of production for the Paul corn."  Pl.'s Mem. of Law at 9.

This Court finds Plaintiff's argument to be without merit.  Indeed, Gill Farms entered into a somewhat unique arrangement with Pauls Farm with respect to the 50 acre parcel.  It is irrelevant that the agreement with Pauls Farm required separate bookkeeping from other farming operations.  The differing financial arrangements does not detract from the primary issue of whether the corn was that of Gill Farms.  What is significant is that the seed was supplied by Gill Farms, Gill Farms prepared the land for planting, Gill Farms directed how the seed was to be planted (including specifying the spacing and depth of the seed), the land was used exclusively by Gills Farm, and Gill Farms applied the fertilizer and pesticides, irrigated, harvested, packed, and sold the corn.  Gills Farm deducted the production cost from the sale of the corn (to cover its investment in producing the corn), received an additional $0.50 per box, and paid any remaining balance to Pauls Farm.  The only contribution by Pauls Farm to the production of the corn was that Charlie Baldwin, a Pauls Farm employee, planted the seed using a planter owned by Pauls Farm and Pauls Farm

supplied the land.  However, as noted, Baldwin acted under the direction of Gill Farms and

the 50 acre parcel was devoted to the use of Gill Farms.  See 29 C.F.R. 780.131.  In short,

this was Gill Farms corn and no fair-minded trier of fact could reasonably conclude that this

corn was that of Pauls Farm.

### 3.      Conclusion Regarding FLSA

For the foregoing reasons, Plaintiffs have failed to demonstrate a triable issue of

material fact concerning whether they are entitled to overtime under the FLSA.  Defendants

have produced evidence demonstrating the applicability of the agricultural exemption and

Plaintiffs have failed to create a genuine issue of material fact in that regard.  There is

insufficient evidence, admissible in form, from which a fair-minded trier of fact could

reasonably conclude that: (1) Gill Farms was not engaged in agriculture; (2) a farmer (Gill

Farms) was not operating the packing shed; (3) Gill Farms was packing corn produced by

other farms, including Pauls Farm; (4) the corn produced on the 50 acre parcel of land

owned by Pauls Farm was not corn owned, grown, cultivated, harvested, or otherwise

produced by Gill Farms; and (5) the packing shed was otherwise not performing secondary

agricultural activities.  Accordingly, the FLSA and New York Labor Law claims must be

dismissed.[4]


### b.      Migrant and Seasonal Agricultural Workers Protection Act

### 1.      Farm Labor Contractors

---

[4] The New York Labor Law and the FLSA embody similar standards and, thus, the disposition of this case concerning the FLSA claims equally apply to the New York Labor Law claims.  See Chen v. Street Beat Sportswear, Inc., — F. Supp.2d —, —, 2005 WL 774323, *5 (E.D.N.Y. 2005).

Plaintiffs also contend that Defendants violated 29 U.S.C. § 1842 by failing to use registered farm labor contractors to recruit its workers.  Specifically, Plaintiffs allege that Defendants' farm labor contractor used unlicensed intermediaries to recruit farm workers.

Section 1842 provides that:

> No person shall utilize the services of any farm labor contractor to supply any migrant or seasonal agricultural worker unless the person first takes reasonable steps to determine that the farm labor contractor possesses a certificate of registration which is valid and which authorizes the activity for which the contractor is utilized. In making that determination, the person may rely upon either possession of a certificate of registration, or confirmation of such registration by the Department of Labor.

29 U.S.C. § 1842.  The evidence in the record is that Defendants used Johnny Martinez to recruit its farm labor.  It is undisputed that Martinez was duly licensed as such by the states of New York and Florida and the federal Department of Labor. Def.'s Stmnt. of Mat. Facts at ¶ 22; Pl.'s Stmnt. of Mat. Facts at ¶ 22.[5]  It also is undisputed that, on occasion, Martinez would speak to one family member about job opportunities and that family member would relay the information to other family members or other persons.  Thus, for example, Martinez might explain to person X about job opportunities available at Gill Farms and person X would then relay that information to his spouse.  Plaintiff contends that this arrangement violated § 1842.  The Court disagrees.

As the statute clearly states, it is unlawful to use an unlicensed farm labor contractor.  A "farm labor contractor" is defined to mean "any person . . . who, for any money or other valuable consideration paid or promised to be paid, performs any farm labor contracting activity." 29 U.S.C. § 1802(7).  "Farm labor contracting activity" is defined to

---

[5] Although Plaintiffs deny that Defendants kept copies of Martinez's licenses, they point to no evidence in support of this denial.

include "recruiting" or "soliciting" any migrant or seasonal agricultural worker.  29 U.S.C. §

1802(6).  There is no evidence in the record that Defendants, or Martinez on behalf of

Defendants, provided money or any other valuable consideration to anyone (other than

Martinez) to recruit or solicit workers.  Because there is no evidence that anyone other than

Martinez performed labor contracting activity on behalf of Defendants, a fair-minded trier of

fact could only conclude that Defendants did not violate § 1842.  This claim must, therefore,

be dismissed.

### 2.        Written Disclosure Requirements

Pursuant to 29 U.S.C. § 1821(a), "[e]ach farm labor contractor, [and] agricultural

employer . . . which recruits any agricultural worker shall ascertain and disclose in writing to

each such worker who is recruited for employment [certain] . . . information at the time of the

worker's recruitment."

Plaintiffs contend that they did not receive the requisite notice upon their

recruitment.  For § 1821 to apply, the worker must have been recruited by a farm labor

contractor (e.g. Martinez) or an agricultural employer (e.g. Gill Farm).  The undisputed facts

in this case are that Plaintiff De La Cruz was not recruited by a farm labor contractor or an

agricultural employer, but by her uncle, Salvador Padilla.  Similarly, Plaintiff Alvarez was not

recruited by a farm labor contractor or an agricultural employer, but by her husband, Jose

Alvarez.  As previously discussed, there is no evidence in the record that Padilla or Alvarez

received any remuneration or consideration for recruiting workers and, thus, they do not fall

within the statutory definition of farm labor contractors.  Because Plaintiffs were not recruited

by a farm labor contractor, § 1821 is inapplicable.  There was no obligation for Defendant to

provide any notice once Plaintiffs arrived in New York and were hired because, at that time,

they were no longer being "recruited," but were being "hired."  <u>Avila v. A. Sam & Sons</u>, 856 F.

Supp. 763, 771-72 (W.D.N.Y. 1994) ("the mere hiring of the plaintiffs when they arrived in

New York . . . is insufficient to trigger the disclosure requirements of the Act."), <u>aff'd</u>, 60 F.3d

812 (2d Cir. 1995).  This claim must, therefore, be dismissed.

### 3.        Providing False or Misleading Information to Workers

Plaintiffs next argue that Defendants violated 29 U.S.C. § 1821 by providing false

or misleading information concerning the terms, conditions, or existence of agricultural

employment required to be disclosed by 29 U.S.C. § 1821 (a), (b), (c) or (d).  The basis for

this argument is that: (1) Defendants listed certain non-economic employment terms (such as

food stamps, a migrant medical program, a child care program, and a migrant educational

program) in the working arrangement, but that such programs were provided by Ulster

County and local not-for-profit organizations; not by Defendants; and (2) Defendants failed to

pay required overtime.

With respect to the non-economic terms of employment, the Court concludes that,

as a matter of law, the statements in the work arrangements were not knowingly false and

misleading.  Although Defendants did not directly provide these benefits, they were available

to Gill Farms's workers.  As such, the statements are not false.  Further, Plaintiffs have

submitted no evidence from which a fair-minded trier of fact could reasonably conclude that

Defendants knowingly supplied false or misleading information.

For the reasons previously discussed, Defendants were not obligated to pay

overtime and, therefore, the failure to do so cannot constitute a violation of the AWPA.

### 4.        Failure to Comply with the Working Arrangements

Plaintiffs argue that federal and state employment related laws are necessarily included as part of the working arrangement between Plaintiffs and Defendants.  It is Plaintiffs' position that Defendants violated these working arrangements (apparently in violation of 29 U.S.C. § 1822(c)[6]) by failing to provide sufficient field sanitation.

For purposes of the pending motion for summary judgment, the Court will assume that federal and state employment related laws are part of the working arrangement between Plaintiffs and Defendants.  See Elizondo v. Podgorniak, 100 F. Supp.2d 459, 463 (E.D. Mich. 2000).  Pursuant to 29 C.F.R. § 1928.110(c)(3), agricultural employers are required to provide toilet facilities "maintained in accordance with appropriate public health sanitation practices."  That provision states that "[t]oilet facilities shall be operational and maintained in clean and sanitary condition."

Plaintiffs point to evidence in the record that Defendants sometimes received complaints from the workers concerning the toilets because "some people pee in the lid" and "[p]eople used to write in the bathrooms nasty stuff."  Martinez Dep. at 178.  There also is evidence that the workers were "stepping on the holding tank, . . . urinating on surfaces not meant for this purpose, and defecating on other surfaces."  Pl.'s Ex. 15.  There also is evidence in the record that the toilets were cleaned at least twice a week[7] and that, when there were complaints about the toilets, the cleaning service was called to rectify the situation that same day.  See Martinez Dep. at 174-75, 178; Gill Dep. at 130, 133.

---

[6] Section 1822(c) provides that "no farm contractor, [or] agricultural employer . . . shall, without justification, violate the terms of any working arrangement made by that contractor [or] employer . . . with any migrant agricultural worker."

[7] The toilets were portable facilities that were maintained by a portable toilet service.

Based on the evidence in the record, a fair-minded trier of fact could reasonably conclude that the toilet facilities were, from time to time, unkempt and unclean. This does not, however, necessarily mean that the toilet facilities were not maintained in accordance with appropriate public health sanitation practices. There is no evidence in the record that the toilet facilities remained in an unclean period of time for any extended period of time or otherwise permitted to remain in an unsanitary condition for an unreasonable period of time, especially once Defendants were made aware of any problems. The applicable regulations, 29 C.F.R. § 1928.110, do not mandate the provision of a bathroom attendant to ensure that the toilet facilities are spotless twenty-four hours a day. What is required is that the toilet facilities reasonably be cleaned and maintained. See 49 FR 7589-01 (Mar. 1, 1984) ("Performance language is used as the frequency of cleaning and maintenance may vary according to the size of the workforce and other factors."). The evidence in the record mandates the conclusion that they were. The undisputed evidence in the record is that the toilets were cleaned and otherwise maintained at least twice a week and more frequently when necessary. There is no evidence from which a trier of fact could reasonably conclude that the toilets were non-operational or otherwise not maintained in accordance with public health sanitation practices.

### 5.      Failure to Maintain Adequate Housing

Plaintiffs next maintain that Defendants failed to provide adequate housing. Section 1823(a) of Title 29 of the United States Cost provides:

> Except as provided in subsection (c) of this section, each person who owns or controls a facility or real property which is used as housing for migrant agricultural workers shall be responsible for ensuring that the facility or real property complies with substantive Federal and State safety and health standards applicable to that housing.

Under the applicable regulations, Defendants were further required to "supervise and continually maintain such facility or property so as to ensure that it remains in compliance with the applicable safety and health standards." 29 C.F.R. § 500.135(d).

Plaintiffs contend that Defendants violated this statute by providing housing that contained unsafe electric wiring, inadequate spacing per inhabitant, inadequate partitions between adults and children, broken windows, insufficient hot water, pest infestation, rotting floors, non-functioning fire extinguishers, and improper lighting. In fact, Defendants had been cited by the United States Department of Labor and the Ulster County Department of Health for various housing deficiencies. In support of their motion for summary judgment, Defendants contend that many of the problems were normal wear and tear. Defendants also submit evidence that they were constantly correcting problems as they arose and even built new housing facilities.

Although it appears that Defendants attempted to correct all deficiencies of which it became aware, the Court finds that there are triable issues of fact on this claim. Defendants admit that there were various deficiencies over the years. For several years, certain of the housing provided by Defendants did not provide adequate space per resident. Defendant Gill testified that certain problems were permitted to continue because of the frequency with which the problems would recur. Thus, for example, Gill testified that the first aid kits were repeatedly emptied out and that "I will replace them a couple of times and then I stop replacing them." Gill Dep. at 225. He also testified that the "fire extinguishers . . . constantly are just emptied out." Id. He similarly testified that, upon learning of some problems, he would wait for the current growing season to end and make the repairs during the off season.

Based on the totality of the evidence in the record and viewing such evidence in the

light most favorable to the non-movant, the Court finds that there are questions of fact concerning the extent to which any housing conditions failed to comply with substantive Federal and State safety and health standards, whether (and when) Defendants knew or should have known of any such conditions, whether (and when) Defendants sufficiently corrected any such conditions, and whether Defendants corrected any problems in a timely manner.

### 6.       Failure to Post Workers' Rights

Pursuant to 29 U.S.C. § 1821(b), agricultural employers must "post in a conspicuous place a poster provided by the Secretary setting forth the rights and protections afforded such workers . . . ."  Defendants submit evidence that the required posters were posted.  Plaintiff De La Cruz  testified that she looked where the posters were supposedly posted, but did not see the required posters.  Although De La Cruz's testimony was somewhat equivocal, looking at the evidence in the light most favorable to Plaintiffs, a triable issue of fact is presented concerning whether the required poster was posted.

### c.       Breach of the Warranty of Habitability

Plaintiffs also contend that, for the same reasons previously discussed concerning the alleged violation of 29 U.S.C. § 1823, Defendants have breached the warranty of habitability found at N.Y. Real Property Law § 235-b.  Defendants argue that this claim must be dismissed because: (1) the above-discussed deficiencies do not constitute a breach of the warranty of habitability; (2) no damages are available; and (3) the warranty of habitability is inapplicable because the housing is provided for free; not under a lease.

Defendants first argument is rejected for the reasons stated above.  There are questions of fact concerning whether any deficiencies rendered the housing unhabitable.

The third argument is also rejected.  Although this may not have been a typical lease arrangement, Defendants provided housing as part of the working arrangements.  As such, the provision of housing can be deemed as part of the consideration for Plaintiffs' employment.  This could fall within the definition of a lease.  See Black's Law Dict. (8th ed. 2004) (defining a lease as "[a] contract by which a rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration.").

For similar reasons, Defendants' second argument also must be rejected. Defendants correctly note that section 235-b does not permit recovery for damages to a tenant's personal property, Couri v. Westchester Country Club, Inc., 186 A.D.2d 712, 715 (2d Dep't 1992), or for personal injuries.  Stone v. Gordon, 211 A.D.2d 881 (3d Dep't 1995). Defendants also correctly point out that the usual damages for a breach of the warranty of habitability is in the form of rent abatement.  German v. Fed. Home Loan Mortg. Co., 885 F. Supp. 537, 568 (S.D.N.Y. 1995).  Other forms of damages also are available, such as specific performance, recision, and injunctive relief.  Id.  Court also have allowed punitive damages in appropriate cases.  Id.

Here, although Plaintiffs did not pay a specified amount for their housing, as previously noted, it may be found to have been part of the consideration for their employment.  As such, a trier of fact may be able to affix a dollar figure to the value of the housing and award damages (if any) accordingly.

**V.     CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART as follows:

a.     the claims for violations of the FLSA are DISMISSED;

      b.     the claims for violations of the New York Labor Law are DISMISSED;

      c.     the claims for violations of 29 U.S.C. § 1842 are DISMISSED;

      d.     the claims for violations of 29 U.S.C. § 1822 are DISMISSED; and

      e.     the claims for violations of 29 U.S.C. § 1821(a), (d) and (f) are DISMISSED.

In all other regards, Defendants' motion is DENIED.  Thus, the following claims remain:

      a.     the claims for violations of 29 U.S.C. § 1823(a), (b);

      b.     the claims for violations of 29 U.S.C. § 1821(b); and

      c.     the claims for violations of N.Y. Real Property Law § 235-b.

Plaintiffs' motion for class certification will be addressed in a separate Decision and Order.

IT IS SO ORDERED.

Dated:April13,2005

Thomas J. McAvoy
Senior, U.S. District Judge